Citation Nr: 1111575 
Decision Date: 03/23/11 Archive Date: 04/05/11

DOCKET NO. 09-27 277 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Jackson, Mississippi


THE ISSUE

Whether new and material evidence has been presented to reopen a service connection claim for a bilateral eye disorder, referred to as atrophy of the bilateral optic nerves.


REPRESENTATION

Veteran represented by: The American Legion


WITNESS AT HEARING ON APPEAL

Veteran


ATTORNEY FOR THE BOARD

N. L. Northcutt, Associate Counsel 
INTRODUCTION

The Veteran served on active duty from January to July of 1952.

This matter comes before the Board of Veterans' Appeals (Board) on appeal from an August 2008 rating decision issued by the Department of Veterans Affairs (VA) Regional Office (RO) in Jackson, Mississippi. 

The Veteran testified at a video-conference hearing before the undersigned Veterans Law Judge in February 2011. A transcript of those proceedings has been associated with the Veteran's claims file.

Please note this appeal has been advanced on the Board's docket pursuant to 38 C.F.R. § 20.900(c) (2010). 38 U.S.C.A. § 7107(a)(2) (West 2002).


FINDINGS OF FACT

1. In a rating decision issued in May 2003, the RO denied service connection for a bilateral eye disorder, referred to atrophy of the bilateral optic nerves. Following receipt of notification of this determination, the Veteran failed to appeal the claim.

2. The evidence submitted since May 2003 is cumulative and fails to relate to an unestablished fact or raise a reasonable possibility of substantiating the Veteran's bilateral eye disorder service connection claim.


CONCLUSION OF LAW

New and material evidence has not been submitted, and the Veteran's claim of entitlement to service connection for atrophy of the bilateral optic nerves is not reopened. 38 U.S.C.A. § 5108 (West 2002); 38 C.F.R. § 3.156 (2010). 


REASONS AND BASES FOR FINDINGS AND CONCLUSION

Duties to Notify and Assist

Under applicable criteria, VA has certain notice and assistance obligations to claimants. See 38 U.S.C.A. §§ 5102, 5103, 5103A, 5107; 38 C.F.R. §§ 3.102, 3.156(a), 3.159, 3.326(a). 

Upon receipt of a complete or substantially complete application for benefits, VA is required to notify the claimant and his or her representative of any information, and any medical or lay evidence, that is necessary to substantiate the claim. 38 U.S.C.A. § 5103(a); 38 C.F.R. § 3.159(b). Proper VCAA notice must inform the claimant of any information and evidence not of record (1) that is necessary to substantiate the claim; (2) that VA will seek to provide; and (3) that the claimant is expected to provide in accordance with 38 C.F.R. § 3.159(b)(1). Pelegrini v. Principi, 18 Vet. App. 112, 120-121 (2004). This notice should be provided prior to an initial unfavorable decision on a claim by the agency of original jurisdiction (AOJ). Mayfield v. Nicholson, 444 F.3d 1328 (Fed. Cir. 2006); Pelegrini v. Principi, 18 Vet. App. 112 (2004). 

With regard to the Veteran's claim to reopen, a May 2008 letter informed the Veteran of the reason that his claim had previously been denied, as well as the new and material evidence necessary to reopen his claim, thereby complying with the mandates of Kent v. Nicholson, 20 Vet. App. 1 (2006). This notice was sent prior to the initial adjudication of the Veteran's claim. 

Regarding VA's duty to assist, the Veteran's VA and service treatment records have been obtained, and there are no records identified by the Veteran as relevant that were not obtained. Additionally, the Veteran testified at a hearing before the undersigned Veterans Law Judge. However, he was not afforded a VA examination to address whether his claimed eye disorder was permanently aggravated by service (his claimed theory of entitlement) because the Veteran failed to submit any new and material evidence to reopen his previously denied claim, and VA's duty to provide a VA examination is not triggered absent the submission of such evidence. See 38 C.F.R. § 3.159(c)(4)(C)(iii) (2010). For the foregoing reasons, the Board concludes that all reasonable efforts were made by the VA to obtain evidence necessary to substantiate the Veteran's claim. Therefore, no further assistance to the Veteran with the development of evidence is required.

Claim to Reopen

In a rating decision issued in May 2003, the RO denied service connection for a bilateral eye disorder, referred to as atrophy of the bilateral optic nerves, and the Veteran failed to appeal this denial. However, a previously denied claim may be reopened by the submission of new and material evidence. 38 U.S.C.A. § 5108; 38 C.F.R. § 3.156.

New evidence is defined as evidence not previously submitted to agency decision-makers. Material evidence means existing evidence that, by itself or when considered with previous evidence of record, relates to an unestablished fact necessary to substantiate the claim. New and material evidence can be neither cumulative nor redundant of the evidence of record at the time of the last prior final denial of the claim sought to be reopened, and must raise a reasonable possibility of substantiating the claim. 38 C.F.R. § 3.156(a).

The RO initially denied the Veteran's service connection claim because the evidence of record failed to reflect that the Veteran's claimed eye disorder, atrophy of the bilateral optic nerves, was permanently aggravated by service. In support of the denial, the RO cited evidence reflecting that the Veteran's poor visual acuity was noted on entrance to service and not shown to have been aggravated during his relatively short (approximate six-month) period of service.

At the time the Veteran's service connection claim was initially denied, the relevant evidence of record included the Veteran's service treatment records, private treatment records, VA treatment records, and submitted statements. 

The Veteran's service treatment records reflected that the Veteran's poor visual acuity was noted on both his pre-induction and entrance physical examination reports, with the Veteran's eye disorder characterized as myopia. The Veteran also reported a history of eye trouble in his pre-induction medical history report. Service treatment records further reflect that soon after his entrance into service, the Veteran was provided with corrective lenses. However, due to the Veteran's continued visual impairment, the Veteran was referred for ophthalmological treatment in May 1952 and admitted to an in-patient medical facility in June 1952 for further diagnostic testing. It was ultimately determined that the Veteran's poor visual acuity was due to atrophy of the bilateral optic nerves, and as this condition was deemed to be one disqualifying him from service, a medical board recommended the Veteran's discharge from service, which was effective in July 1952. 

The Veteran's post-service private treatment records, which dated from December 2000, reflected prescriptions for corrective lenses and diagnoses of asthenopia (eye strain). A March 2003 VA treatment record, which established the Veteran as a new patient, reflected the Veteran's report of experiencing blurred vision and being discharged from service due to atrophy of his optic nerves. In his submitted statements, the Veteran reported that he was experiencing substantial difficulty with his vision and that his visual acuity had deteriorated since his discharge from service in 1952. 

The evidence added to the record since the previous denial includes the Veteran's submitted statements and hearing testimony, copies of service treatment records and personnel records, and his private and VA treatment records. Through his submitted statements and hearing testimony, the Veteran asserts that his visual acuity was permanently aggravated as the result of service. The Veteran further reported that he did not recall any vision problems prior to entering service and stated that while his poor visual acuity was noted upon entrance to service, he was assured that his vision was correctable. He further testified that as the result of in-patient diagnostic testing, his pupils were dilated, resulting in his decreased visual acuity, and that he refused to sign papers associated with his discharge because he felt that he should have been compensated for his visual impairment.

The Veteran's service treatment records were previously of record, and his personnel records continue to reflect the Veteran's discharge from service due to his visual impairment, which was deemed to have existed prior to service. The Veteran's VA and private treatment records reflect various diagnosed vision disorders, including optic disc drusen or optic nerve drusen (noted to have resulted in a restricted field of vision), glaucoma, residuals of cataract surgery (pseudophakia), mixed astigmatism, and presbyopia. The treatment records further reflect that the Veteran has reported a history of visual impairment since childhood and has been deemed legally blind due to his narrowed field of vision. Notably, none of the treatment records include any medical opinions addressing the etiology of the Veteran's current eye disorders or relating them to service.

After reviewing the evidence of record, the Board finds that the Veteran has not submitted new and material evidence to reopen his previously denied bilateral eye disorder service connection claim. The newly submitted service treatment records are duplicates of those previously of record and were considered by the RO when initially adjudicating the Veteran's claim; accordingly, they are not new. The Veteran's personnel records, while new, are cumulative, in that they continue to reflect that the Veteran was discharged after it was determined that he had a medically disqualifying condition (his bilateral eye disorder) that had existed prior to service. Accordingly, these records are not material, as they fail to raise a reasonable probability of substantiating the Veteran's claim.

The Veteran's newly submitted VA and private treatment records continue to reflect the Veteran's treatment for various eye disorders; however, they fail to reflect any medical opinion relating the Veteran's currently diagnosed eye disorders to service or to a permanent in-service aggravation of an eye disorder that preexisted service. 
Moreover, while the Veteran currently contends that his decreased visual acuity has resulted from an in-service aggravation of an eye disorder first noted on entrance to service, the Veteran is not medically qualified to relate his perceived decrease in visual acuity to service or to his in-service ophthalmological treatment. See Jandreau v. Nicholson, 492 F. 3d 1372 (Fed. Cir. 2007) (holding that a lay person is not considered competent to testify regarding medically complex issues); see also Espiritu v. Derwinski, 2 Vet. App. 492, 494-95 (1992) (holding that lay persons, such as the Veteran, are not medically qualified to prove a matter requiring medical expertise, such as an opinion as to diagnosis or medical causation). Moreover, lay assertions of medical causation cannot serve as a predicate to reopen a previously-denied claim. See Hickson v. West, 11 Vet. App. 374 (1998). 

As such, given that the newly submitted evidence was previously considered by the RO when initially adjudicating the Veteran's service connection claim; is cumulative of evidence previously of record; or is immaterial because it fails to link the Veteran's current eye disorders to service or a permanent in-service aggravation of a preexisting condition; the Board finds that the Veteran has not submitted sufficient evidence to reopen his claim. Accordingly, the Veteran's appeal is denied.


ORDER

New and material evidence having not been presented, the Veteran's claim to reopen service connection for a bilateral eye disorder, referred as atrophy of the bilateral optic nerves, is denied.




____________________________________________
MICHAEL E. KILCOYNE
Veterans Law Judge, Board of Veterans' Appeals



Department of Veterans Affairs